## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| THI MILLER, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 12-cv-04961 |
| *v.* | |
| RED BULL NORTH AMERICA, INC., a California corporation, | [Hon. Judge St. Eve] |
| *Defendant*. | |

## PLAINTIFF'S UNOPPOSED[1] MOTION & MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Respectfully submitted by:

Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
Benjamin H. Richman
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com
brichman@edelson.com

*Attorneys for Plaintiff and the Class*

---

[1] The Defendant does not oppose the relief requested by this Motion. The Parties agree that the Defendant specifically retains its right to raise any and all defenses it may have in the event that litigation should continue for any reason.

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.      NATURE OF THE LITIGATION ........................................................................ 2

III.      THE TCPA

     A.      Plaintiff's Allegations & the Litigation History ........................................ 3

     B.      Settlement Discussions and Private Mediation ......................................... 3

IV.      TERMS OF THE SETTLEMENT ...................................................................... 4

     A.      Class Definition ...................................................................................... 5

     B.      Monetary Relief ...................................................................................... 5

     C.      Additional Relief .................................................................................... 5

         1.      Injunctive Relief ......................................................................... 5

         2.      Class Member List Removal Requests ...................................... 5

         3.      Payment of Notice and Settlement Administrative Expenses ...... 6

         4.      Incentive Award for Class Representative ................................... 6

         5.      Payment of Attorneys' Fees and Expenses ................................ 6

     D.      Release of Liability .................................................................................. 6

V.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED. ...................... 6

     A.      There is a Sufficiently Numerous and Ascertainable Class. ................................. 7

     B.      The Requirement of Commonality is Satisfied. ................................................... 8

     C.      The Requirement of Typicality is Satisfied. ........................................................ 9

     D.      The Requirement of Adequate Representation is Satisfied. ................................ 10

     E.      The Settlement Meets the Requirements of Rule 23(b)(3). ................................ 12

         1.      Common Questions of Law and Fact Predominate. ......................... 12

         2.      This Class Action is a Superior Method of Adjudication. .................. 13

VI.      PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL. ........ 14

i

**VII.**   **THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL.** ........................................................................................ 15

**VIII.**   **THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED.** .................... 19

**IX.**   **CONCLUSION** ........................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**<u>United States Supreme Court Cases:</u>**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................... 6, 7, 10, 12, 13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................................................19

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) .................................................................2

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .........................................................8, 12

**<u>United States Circuit Court of Appeals Cases:</u>**

*Armstrong v. Board of Sch. Dirs. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ....................15, 16

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) ........................................................................7

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ........................................................................15

*Harper v. Sheriff of Cook Co.,* 581 F.3d 511 (7th Cir. 2009) ........................................................7

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) ...............................................13

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) .................................................................................15

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) .............................................................................8

*Lemon v. Int'l Union of Operating Eng'g, Local No. 139, AFL-CIO,*
  216 F.3d 577 (7th Cir. 2000) .................................................................................................12

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ...................................................13

*Pella Corp. v. Saltzman,* 606 F.3d 391 (7th Cir. 2010) .................................................................7

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) ........................9, 10

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir.1992) ......................................................................8

*Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2012) ............................................................8

*Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009) .............................................2

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ..........................16

**<u>United States District Court Cases:</u>**

*Arthur v. Sallie Mae, Inc.*, No. C-10-198JLR (dkt. 266) (W.D. Wash. 2012) .............................18

*Bridgeview Health Care Ctr. Ltd.*, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011) .......................14

*Brieger v. Tellabs, Inc.*, 245 F.R.D. 345 (N.D. Ill. 2007) ..............................................................9

*Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336,
    2011 WL 2708399 (N.D. Ill. July 12, 2011) ................................................13

*CE Design v. Beaty Const., Inc.,* No. 07 C 3340,
    2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ................................ 10, 11, 12-13

*CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) ........................10, 14

*Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04 C 7625,
    2005 WL 2171168 (N.D. Ill. Aug. 30, 2005) ................................................11

*Cotton v. Asset Acceptance, LLC*, No. 07 C 5005,
    2008 WL 2561103 (N.D. Ill. June 26, 2008) ................................................12

*Espinal v. Burger King Corp.*, No. 09-20982 (S.D. Fla. 2010) ............................................. 11-12

*Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328 (N.D. Ill. 2006)..........................................9

*G.M. Sign, Inc. v. Group C Communications, Inc.*, No. 08-cv-4521,
    2010 WL 744262 (N.D. Ill. Feb. 25, 2010) ................................................14

*Gutierrez, et al. v. Barclays Group, et al*. No. 10-cv-1012 (dkt. 58)......................................18-19

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008)..................8, 10, 11, 14

*Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) ......................10

*In re AT&T Mobility Wireless Data Serv. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010).................................................................7, 11, 15, 16

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
    No. 3:11-MD-02261-JM-JMA (dkt. 97) (S.D. Cal. 2013)................................18

*Kazemi v. Payless Shoesource, Inc.*, No. CV09-5142 (dkt. 94) (N.D. Cal. 2012) ......................18

*Kessler v. Am. Resorts Int'l*, No. 05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007).........16

*Kramer v. Autobytel Inc.*, No. 10-cv-02722-CW (N.D. Cal. 2012)..............................................11

*Lozano v. Twentieth Century Fox Film Corp.*,
    No. 09-cv-6344 (dkt. 65) (N.D. Ill. Apr. 15, 2011) ................................11, 18

*Pimental v. Google, Inc*. No. 11-cv-02585-YGR (N.D. Cal. 2012) ............................................18

*Ross v. RBS Citizens, N.A.*, No. 09 CV 5695, 2010 WL 3980113 (N.D. Ill. Oct. 8, 2010)............9

*Satterfield v. Simon & Schuster*, No. 06-cv-02893 (dkt. 132) (N.D. Cal. Aug. 6, 2010) ........11, 18

*Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323 (N.D. Ill. 2010) ............................................7

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)................................................16

*Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139 (N.D. Ill. 2010)...................8

iv

*Targin Sign Systems, Inc. v. Preferred Chiropractic Center, LTD.*,
  679 F. Supp. 2d 894 (N.D. Ill. 2010) ...............................................................................14

*Vodak v. City of Chicago*, No. 03 C 2463, 2006 WL 1037151 (N.D. Ill. Apr. 17, 2006) .......10, 11

*Weinstein v. The Timberland Co., et al.*,
  No. 06-cv-00484 (dkt. 93) (N.D. Ill. Dec. 18, 2008) ...................................................11, 18

*Wright-Gray v. Hamos*, No. 09 C 04414, 2012 WL 366597 (N.D. Ill. Feb. 2, 2012) ....................9

**Statutory Provisions:**

Fed. R. Civ. P. 23 .........................................................................................................*passim*

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ...............................................1, 2, 3

**Miscellaneous Authorities:**

Conte & Newberg, *4 Newberg on Class Actions* § 11.25 (4th ed. 2002) ......................................15, 19

*Manual for Complex Litigation* (Fourth) § 21.632 .................................................................6, 15

v

## I.    INTRODUCTION

Starting in 2007, energy drink company Red Bull North America, Inc. utilized a "mobile club," through which it could send text message announcements and promotions to customers who provided their cell phone numbers to the company. The instant class action alleges that while, most of the time, Red Bull properly obtained express consent to send future text messages to their customers, in certain instances, Red Bull violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq.*, by simply presuming consent based on the fact that a customer had provided his or her cell phone number when participating in a Red Bull contest or promotional event.

After pursuing dual tracks of litigation and mediation (the latter of which spanned three months and involved four mediation sessions in front of the Honorable Wayne R. Andersen (ret.)), the Parties[2] reached a proposed class action settlement, that, if approved by the Court, will finally resolve all claims on behalf of the Settlement Class against Defendant related to the alleged violations of the TCPA. As explained below, the relief afforded by the settlement is a tremendous result for the proposed Settlement Class.

Under the terms of the settlement, Defendant has agreed to create a Settlement Fund in the amount of $6,000,000 from which Class Members who submit a short and simple claim form will receive a settlement cash payment of up to $110. The Settlement Fund will also be used to pay all notice and claims administration expenses, attorneys' fees and costs, and an incentive award to the Plaintiff. Further, Defendant has agreed to ensure that express consent is obtained from consumers before any future text message advertisements are sent.

The fairness of the settlement can also be analyzed by comparing it to other TCPA text

---

[2] Unless otherwise stated herein, capitalized terms shall have the same meaning as set forth in the Parties' Class Action Settlement Agreement, attached hereto as Exhibit 1.

message settlements that have received approval of federal courts throughout the country—this settlement is very much in line with those other settlements. *See, infra* at § VII (discussing that most TCPA spam text settlements fall in the $100-$200 range per class member.) When compared to cases like the instant one, where the class members had a direct relationship with the defendant (and thus the issue of consent was murkier), this settlement is especially strong. *See, infra* at §VII (discussing that "direct relationship" text message settlement typically range from $25 merchandise vouchers to $100 in cash.)

All told, whether standing alone, or viewed along side those other settlements, the instant class action settlement should be viewed as well within the range of approval. Accordingly, Plaintiff moves the Court to preliminarily approve the instant Settlement Agreement, certify the proposed class, and appoint Jay Edelson and Rafey S. Balabanian of Edelson LLC as Class Counsel.

## II.    The TCPA

A brief summary of the law that forms the basis of Plaintiff's claims will put the settlement in context. Congress passed the TCPA in response to "voluminous consumer complaints" and to prohibit "intrusive nuisance calls" it determined were invasive of privacy. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012); *see Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (finding that in enacting the TCPA, Congress sought to "protect the privacy interests of telephone subscribers"). The TCPA exists as a means to combat the growing threat to privacy being caused by automated telemarketing practices and states that:

> It shall be unlawful for any person within the United States . . . (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system[.]

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA applies with equal force to text message calls as it does

to voice calls made to cell phones. *Satterfield*, 569 F.3d at 954.

The TCPA's prohibitions at issue require the calls to be made with certain equipment termed an "automatic telephone dialing system" ("ATDS"), which Congress defines as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA sets statutory damages in the amount of $500 per violation, and provides for injunctive relief prohibiting the further transmission of such messages. *See* 47 U.S.C. § 227(b)(3)(A-B).

## III. NATURE OF THE LITIGATION

### A. Plaintiff's Allegations & the Litigation History

Plaintiff Miller filed her Class Action Complaint on June 21, 2012, alleging that she received unauthorized text message advertisements promoting Red Bull in violation of the TCPA. (Dkt. 1.) Immediately following the filing of her complaint, Miller filed her motion for class certification. (Dkt. 4.) On September 11, 2012, Red Bull answered the complaint, denying the substance of the allegations and setting forth numerous affirmative defenses. (Dkt. 29.) At a hearing on September 17, 2012, the Court denied Plaintiff's motion for class certification without prejudice, and set a discovery schedule. (Dkt. 35.)

Following their Rule 26(f) conference, the Parties exchanged initial disclosures, and Plaintiff propounded discovery on Defendant and other third parties. (*See* Declaration of Jay Edelson ["Edelson Decl."] ¶ 2, a true and accurate copy of which is attached as Exhibit 2.) It was at this juncture that the Parties agreed to attempt to resolve this litigation through private mediation with Judge Andersen. (Edelson Decl. ¶ 2.) In the weeks leading up to mediation, the Parties informally exchanged certain documents and other information that would be needed to

3

effectively engage in the mediation process. (*Id*.)

**B.  Settlement Discussions and Private Mediation**

On November 6-7, 2012, the Parties met for a formal mediation with Judge Andersen. (Edelson Decl. ¶ 3.) After two days of mediation, additional exchanges of information, and several rounds of arm's-length negotiations—all with the assistance of Judge Andersen—the Parties made a great deal of progress toward a classwide settlement. Nevertheless, certain issues remained unresolved, and, as such, the Parties agreed to continue the negotiations with the assistance of Judge Andersen before returning to litigation. (*Id*. ¶ 3.)

After several additional rounds of arm's-length negotiations all the time presided over by Judge Andersen, and having made substantial progress toward a classwide settlement, the Parties agreed to another in-person mediation, which took place on January 10, 2013. (Edelson Decl. ¶¶ 5, 6.) Through this subsequent mediation, the Parties were able to reach an agreement on the principal terms of a settlement. (*Id*. ¶ 6.) However, while negotiating the final terms of the settlement, the Parties reached yet another impasse and, on February 25, 2013, convened for a final mediation session with Judge Andersen. With Judge Andersen's assistance, the Parties were able to resolve all remaining issues. (*Id*. ¶ 7.) In the weeks that followed, they finalized the ancillary terms of the settlement and reduced it to writing in the form of the Settlement Agreement now before the Court. Accordingly, Plaintiff seeks preliminary approval of the settlement.

**IV.  TERMS OF THE SETTLEMENT**

The terms of the settlement are summarized briefly below, and are set forth in their entirety in the Settlement Agreement (attached as Exhibit 1):

**A.  Class Definition.** The "Settlement Class" is defined as all Persons in the United

States and its territories who received one or more unauthorized text messages from or on behalf of the Defendant as a result of a Non-Compliant Campaign.[3] (Agreement ¶ 1.34.)

      **B.**    **Monetary Relief.**  Without admitting liability or damages, Red Bull has agreed to provide $110 cash settlement payments to each Class Member who submits a valid Claim Form, to be paid from a $6,000,000 Settlement Fund. If the total amount required to pay each Valid Approved Claim would exceed the remaining amount in the Settlement Fund after payment of Settlement Notice and Administration Expenses, the Fee Award to proposed Class Counsel, and the incentive award to the Class Representative, then each Settlement Class Member with a Valid Approved Claim will receive a reduced *pro rata* share of the amount of the Settlement Fund remaining after payment of all such amounts. (Agreement ¶ 2.1.)

      **C.**    **Additional Relief.** In addition to the individual relief to the Settlement Class provided above, Red Bull has also agreed to provide the following additional relief under the Settlement:

      **1.**    **Prospective Relief:** Red Bull has agreed that, in the applicable circumstances, it will obtain express consent (to the extent it does not already have express consent) prior to sending future Text Messages to individuals. (Agreement ¶ 2.2.)

      **2.**    **Class Member List Removal Requests:** Each Claim Form will include an option whereby each Settlement Class Member can choose to have his or her cell phone number removed from any list or database of numbers to which Text Messages could be sent by

---

[3] A "Non-Compliant Campaign" is defined by the Settlement as "any advertising campaign conducted by or on behalf of the Defendant that is not a Compliant Campaign." (Agreement ¶ 1.16.) A "Compliant Campaign" is defined by the Settlement as "an advertising campaign conducted by or on behalf of the Defendant, where at least one advertisement or communication for the relevant campaign included language on its face indicating that a participant in the campaign would receive Text Messages from or on behalf of the Defendant. (*Id*. ¶ 1.5.) The Settlement Class excludes certain persons, such as those employed by Red Bull, as stated in Paragraph 1.34.

or on behalf of the Defendant. (Agreement ¶ 2.3.)

        3.    **Payment of Notice and Settlement Administrative Expenses:**

Defendant has agreed to pay, from the Settlement Fund, the cost of sending the Notice set forth

in the Agreement and any other notice as required by the Court, as well as all costs attendant

with administration of the settlement. (Agreement ¶¶ 1.32, 1.36.)

        4.    **Incentive Award for Class Representative:**  In recognition of her effort

on behalf of the Settlement Class, Defendant has agreed to pay from the Settlement Fund, subject

to approval of the Court, an incentive award of $5,000 to Miller as the Class Representative.

Defendant will not oppose any request limited to this amount. (Agreement ¶ 8.2.)

        5.    **Payment of Attorneys' Fees and Expenses:** Under the Agreement,

Defendant has agreed that a portion of the Settlement Fund may be used to pay proposed Class

Counsel reasonable attorneys' fees and reimbursement of expenses incurred in this Action in an

amount to be determined by this Court. Defendant will be entitled to oppose the amounts claimed

by Class Counsel and the basis for determining those amounts under applicable law. (Agreement

¶¶ 1.36, 8.1.) Class Counsel will seek no more than $2 million in attorneys' fees and no more

than $100,000 in costs.

        D.    **Release of Liability.** In exchange for the relief described above, Defendant, and

each of its related entities and affiliated persons, will receive a full release and covenant not to

sue for all claims related to the transmission of text messages to Settlement Class Members as a

result of a Non-Compliant Campaign. (*See* Agreement ¶¶ 1.27-1.29, 3.1-3.3 for the complete

release language.)

## V.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED.

        The first step in granting preliminary approval of a class action settlement is for the Court

to determine that the proposed settlement class may properly be certified. *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A party seeking class certification must satisfy the factors enumerated in Federal Rule of Civil Procedure 23(a) by demonstrating that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008); *Harper v. Sheriff of Cook Co.*, 581 F.3d 511, 513 (7th Cir. 2009).

In addition to satisfying the prerequisites of Rule 23(a), a plaintiff must also demonstrate one of the three provisions of Rule 23(b). *Amchem*, 521 U.S. at 614; *Harper*, 581 F.3d at 513. In the instant matter, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(3). Certification under this provision requires that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. *See Amchem*, 521 U.S. at 615-16; *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) *cert. denied*, 131 S. Ct. 998 (2011). Ultimately, district courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 340 (N.D. Ill. 2010). As discussed in detail below, this Court should grant preliminary approval to the proposed Settlement Agreement, as it meets each of the relevant Rule 23 requirements. Courts have consistently certified TCPA settlement classes. *See, infra* at § V.D and § VII for a collection of cases.

A.     **There is a Sufficiently Numerous and Ascertainable Class.**

Numerosity exits where "the class is so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010). A "definiteness" requirement has also been read into the requirements of Rule 23(a) and is satisfied where the proposed class "members can be ascertained by reference to objective criteria and may be defined by reference to defendant's conduct." *Hinman v. M & M Rental Cen., Inc.* 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008); *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 146 (N.D. Ill. 2010). The proposed Settlement Class here consists of approximately 110,000 cell phone customers to whom the text messages at issue were transmitted. (Edelson Decl. ¶ 7.) Given both the substantial size and ascertainability of the proposed class, the Settlement Class satisfies the numerosity requirement.

### B. The Requirement of Commonality is Satisfied.

The second requirement of class certification asks whether there are "questions of law or fact common to the class" that exist. Fed. R. Civ. P. 23(a)(2). Commonality may be demonstrated when the claims of all class members "depend upon a common contention," and "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2556 (2011). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992)). The common contention must be of such a nature that it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S. Ct. at 2545. While commonality typically exists where a defendant has engaged in standardized conduct towards members of the proposed class, it also requires a plaintiff to show

that such conduct has caused class members to suffer the same injury. *Hinman*, 545 F. Supp. 2d at 806; *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 908-10 (7th Cir. 2012).

In this case, all members of the proposed Settlement Class share a common claim arising out of the same alleged activity—the transmission of text message advertisements to their cell phones promoting Red Bull's products and events without their prior express consent. This common nucleus of operative alleged facts results in the Settlement Class Members sharing a common statutory claim under the TCPA that shares factual and legal questions such as: (1) whether the equipment used to send the allegedly offending messages was an ATDS, (2) whether the mere fact of texting Red Bull in response to a promotion or contest constitutes "prior express consent" to receive future text messages, and (3) whether Settlement Class Members are entitled to uniform statutory damages under the TCPA as a result of the alleged conduct. The determination of these factual and legal issues would resolve the claims of all Settlement Class Members in one stroke.

Considering the common nature of the issues and facts that bind the proposed class together, the Settlement Class satisfies this element of commonality.

## C.     The Requirement of Typicality is Satisfied.

The third element of Rule 23(a), typicality, directs courts to "focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 336 (N.D. Ill. 2006) (quoting *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-97 (7th Cir. 1993)). Typicality and commonality are closely related, given that typicality exists where the claims of the named plaintiff arise from the same event or course of conduct that, in turn, gives rise to the claims of other class members, and where those claims are based on the same legal theory. *Wright-Gray v.*

9

*Hamos*, No. 09 C 04414, 2012 WL 366597, at *9 (N.D. Ill. Feb. 2, 2012); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 350 (N.D. Ill. 2007). However, typicality is to be liberally construed, and the claims of the named plaintiff and the class members need not be identical. *Ross v. RBS Citizens, N.A.*, No. 09 CV 5695, 2010 WL 3980113, at *3 (N.D. Ill. Oct. 8, 2010) *aff'd*, 667 F.3d 900 (7th Cir. 2012). In instances where a defendant's conduct consisted of sending unsolicited advertisements, either by text message or fax in violation of the TCPA, courts have found that the requirement of typicality is met. *See, e.g., CE Design v. Beaty Const., Inc.,* No. 07 C 3340, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009); *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 141 (N.D. Ill. 2009); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009).

In the instant matter, Defendant's alleged common course of transmitting text message advertisements—without first obtaining the prior express consent of the recipients—resulted in uniform injuries to the Settlement Class Members. Miller is but one of thousands who allegedly received unauthorized text message advertisements from, or on behalf of, Red Bull. Because her experience and corresponding alleged injury is no different than the other Class Members, Rule 23(a)(3)'s requirement for typicality is satisfied.

### D. The Requirement of Adequate Representation is Satisfied.

The final Rule 23(a) prerequisite requires that the representative parties have, and will continue to, "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The element of adequacy is divided into two inquiries, considering both "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest" of the class members. *Retired Chicago Police Ass'n.*, 7 F.3d at 598. Ultimately, this inquiry "serves to uncover conflicts of interest between named

10

parties and the class they seek to represent." *Amchem*, 521 U.S. at 625.

A named plaintiff will adequately represent the proposed class where he or she has a sufficient stake in the outcome "to ensure zealous advocacy" and where his or her claims are not "antagonistic to or conflicting with the claims of other class members." *Vodak v. City of Chicago*, No. 03 C 2463, 2006 WL 1037151, at *6 (N.D. Ill. Apr. 17, 2006); *Hinman*, 545 F. Supp. 2d at 807. A representative plaintiff who "possess[es] the same interest and suffer[ed] the same injury as the class members" will likely pursue the interests of the class. *Vodak,* 2006 WL 1037151, at *6.

Plaintiff Miller and the Settlement Class Members were all allegedly sent unauthorized text message advertisements promoting Red Bull's products and events. Thus, Plaintiff Miller's interests are entirely representative of and consistent with the interests of the Settlement Class. *See CE Design*, 2009 WL 192481, at *5 (claims of named plaintiff and proposed class were "based upon the same legal theory, *i.e.* violation of the TCPA," where defendant sent unsolicited advertisements to both). Because her interests in obtaining statutory monetary and prospective relief from Red Bull for the alleged transmission of the text messages in violation of the TCPA mirrors the interests of the Settlement Class, Plaintiff satisfies the first prong of the adequacy analysis.

The second prong of the adequacy requirement is concerned with the "competency and conflicts of class counsel." *In re AT&T,* 270 F.R.D. at 343-44. Courts have found it to be persuasive evidence where class counsel has been deemed adequate to serve as class counsel in other cases. *Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04 C 7625, 2005 WL 2171168, at *5 (N.D. Ill. Aug. 30, 2005). Proposed Class Counsel have regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits—especially those

related to telecommunications and the TCPA—that are similar in size, scope and complexity to the present case. (*See* Firm Resume attached the Edelson Declaration as Exhibit A); *see, e.g., Lozano v. Twentieth Century Fox Film Corp.*, No. 09-CV-6344 (N.D. Ill.) (appointing Class Counsel in nationwide class action settlement of TCPA claims); *Weinstein, v. The Timberland Co.,* No. 06-cv-0454 (N.D. Ill.) (same); *Kramer v. Autobytel Inc.*, No. 10-cv-02722-CW (N.D. Cal. 2012) (same); *Satterfield v. Simon & Schuster*, No. 06-cv-2893 CW (N.D. Cal.) (same); *Espinal v. Burger King Corp.*, No. 09-20982 (S.D. Fla. 2010) (same). As they did in each of those cases, to date, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this Action, and they will continue to do so throughout its pendency. (Edelson Decl. ¶ 9.)

Accordingly, Plaintiff and her counsel have and will continue to adequately represent the Settlement Class and the final Rule 23(a) requirement is satisfied.

### E.       The Settlement Meets the Requirements of Rule 23(b)(3).

In addition to the requirements enumerated in Rule 23(a), Plaintiff must also demonstrate one of the three requirements of Rule 23(b). *Dukes*, 131 S. Ct. at 2548. Pursuant to Rule 23(b)(3), a class action may be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of plaintiff's claims. Fed. R. Civ. P. 23(b)(3).

### 1.       Common Questions of Law and Fact Predominate.

The predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The requisite cohesiveness is present when common questions of law or fact, shared amongst the entire class,

make "class-wide adjudication of the common questions efficient compared to repetitive individual litigation of the same questions." *Cotton v. Asset Acceptance, LLC*, No. 07 C 5005, 2008 WL 2561103, at *5 (N.D. Ill. June 26, 2008) (quoting *Lemon v. Int'l Union of Operating Eng'g, Local No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir. 2000)). Common legal and factual issues are routinely found to predominate in cases where class members allege violations of the TCPA related to a defendant's conduct of transmitting unsolicited advertisements. *See e.g. CE Design*, 2009 WL 192481, at *8-9 (finding that whether the plaintiffs received unsolicited faxes "is the singular question that predominates above all else").

Here, the common factual and legal questions—whether the text message advertisements at issue were transmitted by or on behalf of Defendant with an ATDS, and whether the requisite "prior express consent" to send messages was obtained—are the central focus of this class action. Because the class-wide determination of these issues looms large over any individual issues that exist, the Settlement Class satisfies the predominance requirement.

## 2. This Class Action is a Superior Method of Adjudication.

Much like the requirement of predominance, the superiority requirement is satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). In cases where thousands of consumer class members have the same claim, the Seventh Circuit recognizes the superiority of class action settlements over individual actions:

> Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. Reliance on federal law avoids the complications that can plague multi-state classes under state law, and society may gain from the deterrent effect of financial awards.

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Also, because the Action will

13

now settle, the Court need not consider issues of manageability relating to trial. *See Butler v. Am. Cable & Tel., LLC*, 2011 WL 2708399, at *6 (N.D. Ill. July 12, 2011) (citing *Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial")).

This matter is especially suited for class-action status as the Plaintiff and the members of the proposed Settlement Class all allegedly suffered violations of the same federal statute. Absent a class action, members of the Settlement Class would likely be unwilling or unable to litigate their claims, given that—even if damages were trebled for willful violation of the TCPA, which is unlikely to happen in a case like this—each Settlement Class Member would be statutorily limited to an award of $1500. *See Bridgeview Health Care Ctr. Ltd.*, 2011 WL 4628744, at *6 (N.D. Ill. Sept. 30, 2011) ("the class action method is superior in this [TCPA] case because resolution of the issues on a classwide basis is preferable to the filing of thousands of claims based on the same conduct, and far more likely to take place since the potential recovery is too slight to support individual suits."). Accordingly, this Court should approve certification of the proposed Settlement Class, as this class action represents a superior method of adjudication of Plaintiff's claims.

## VI. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

Pursuant to Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). To make this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

14

As discussed in greater detail above, proposed Class Counsel have experience with similar class action litigation and have been appointed class counsel in consumer class actions similar to the Action here. (Edelson Decl. ¶ 8.) Further, proposed Class Counsel have diligently investigated and prosecuted this matter, dedicating substantial resources to the investigation of the claims at issue, and have successfully negotiated the settlement of these claims for the benefit of the Settlement Class. (*Id.* at 8.) Accordingly, the Court should appoint Jay Edelson and Rafey S. Balabanian of Edelson LLC as Class Counsel.

## VII. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL.

After certifying the proposed class for settlement purposes, the Court must next consider whether to grant preliminary approval. The procedure for review of a proposed class action settlement is a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see Armstrong v. Board of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). First, courts conduct a pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." Newberg, §11.25, at 38-39; *Armstrong*, 616 F.2d at 314. The purpose of this preliminary approval hearing is not to conduct a "fairness hearing," but rather "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314; Newberg, §11.25, at 38-39. This stage serves as an "initial evaluation" of the proposed settlement, taking into consideration the written submissions as well as the informal presentations provided by the settling parties. *Manual for Complex Litigation,* § 21.632. Upon determining that the settlement proposal is "within the range of possible approval," the court

15

then proceeds to the second step, a final approval hearing. Newberg, §11.25, at 38-39; *In re AT&T,* 270 F.R.D. at 346.

"Federal courts naturally favor the settlement of class action litigation." *In re AT&T,* 270 F.R.D. at 345 (quoting *Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996)). Upon a finding that a proposed settlement is "fair, reasonable, and adequate," strong judicial and public policy favors the approval of such a settlement. *Isby,* 75 F.3d at 1198. In determining whether the proposed settlement is fair, reasonable and adequate, courts look to the following factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer; (2) an assessment of the likely complexity of a trial; (3) the length and expense of the litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and amount of discovery completed at the time of settlement. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir.2006)). Though these factors are ultimately determined at the fairness hearing that follows preliminary approval of the proposed settlement, a summary version of the same inquiry also takes place at this phase of the approval process. *Kessler v. Am. Resorts Int'l*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314)). Applying the six-factor test to the instant case demonstrates that the proposed settlement is "fair, reasonable and adequate" and thus well within the range of approval.

The first factor, the strength of the plaintiff's case compared to the settlement offer, garners the most weight in this analysis and strongly favors approval of this settlement. *See Schulte*, 805 F. Supp. 2d at 578 (N.D. Ill. 2011). Courts should be mindful not to reject a settlement solely because it does not provide a complete victory, given that parties to a

settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T*, 270 F.R.D. at 347. Here, Plaintiff Miller believes her claim for $500 statutory relief and an injunction under the TCPA to be strong, but is also cognizant of the risks inherent in moving forward with complex litigation of this nature—absent a settlement, the success of any of Red Bull's various legal defenses and the factual difficulties involved in this case could deprive the Settlement Class Members of any potential relief whatsoever. This concern is amplified by the fact that each of the Settlement Class Members in this case initiated a relationship with Red Bull by sending it a text message in response to a mobile marketing campaign. Given the possibility of a loss on the merits and/or on the question of class certification for the putative class defined in the Complaint, Plaintiff views the monetary payment of $110 per class member from a $6,000,000 Settlement Fund, as well as the prospective relief, to be a significant achievement for the Settlement Class.

Under the second and third factors, in the absence of settlement it is certain that the expense, duration, and complexity of proceeding with litigation and trial preparation in this case would be substantial. Should this case proceed to trial, evidence and witnesses from across the country would need to be assembled. Further, given the complexity of the issues and the amount of money in controversy, the losing party would assuredly appeal any decision on class certification, a dispositive motion, or judgment at trial. As such, the immediate relief provided by the proposed Settlement Agreement weighs heavily in favor of approval, and avoids the inherent risks associated with complex litigation of this kind. (Edelson Decl. ¶¶ 9, 10.)

In regard to the fifth factor,[4] proposed Class Counsel believe the proposed Settlement

---

[4] The fourth factor relevant to considering approval of a class action settlement is the amount of

Agreement represents a significant recovery for Settlement Class Members who will each receive an immediate payment of $110 upon submission and approval of a valid Claim Form and prospective relief designed to prevent similar conduct going forward. Moreover, the settlement provides substantial monetary recovery and prospective relief immediately instead of having to wait for the litigation and appeals to run their course. Proposed Class Counsel, based, in part, on their experience with similar cases, believe that the proposed settlement is in the best interest of the Class Members.

As for the final factor, the instant Agreement was not finalized until the Parties had conducted sufficient discovery and additional exchanges of information, and only after three separate mediations with Judge Andersen. (*See* Edelson Decl. ¶¶ 2, 3, 7.) As such, the Parties had sufficient information to make knowledgeable decisions about settlement throughout the negotiations, and this factor weighs in favor of the preliminary fairness of the Settlement Agreement.

Finally, the Court need not rule on a blank slate as to the fairness, reasonableness, and adequacy of the instant settlement, as similar class actions have received final approval from numerous courts in this District and other federal districts throughout the country. The range of recovery in most TCPA settlements—where the defendants sent *en masse* text message spam without any prior relationship—is between $100 – $200 per class member.[5] *See, e.g., Weinstein*, No. 06-cv-00484 (dkt. 93) (N.D. Ill. Dec. 18, 2008) (providing for a cash payment of $150 to

---

opposition to the settlement. Presently, there is no opposition to the settlement and, given the strength of this settlement, the Parties expect little or no opposition to the settlement by Class Members.

[5]     While a majority of the TCPA text-spam settlements fall within this range, there are a few outliers. *See, e.g., Pimental v. Google, Inc*. No. 11-cv-02585-YGR (N.D. Cal. 2012) (providing a cash payment of $500, or a *pro rata* share of the settlement fund, to each class member).

each class member); *Satterfield*, No. 06-cv-02893 (dkt. 132) (N.D. Cal. Aug. 6, 2010) (providing

for a cash payment of $175 to each class member); *Lozano,* No. 09-cv-6344 (dkt. 65) (N.D. Ill.

Apr. 15, 2011) (providing for a cash payment of $200 to each class member). However, where a

direct relationship exists between the defendant and the class members, the typical per class

member recoveries range from under $25 in cash or vouchers to as much as $100 in cash. *See,*

*e.g.*, *Kazemi v. Payless Shoesource, Inc.*, No. CV09-5142 (dkt. 94) (N.D. Cal. 2012) (providing

for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-

MD-02261-JM-JMA (dkt. 97) (S.D. Cal. 2013) (providing for a $20 voucher or $15 cash to each

class member); *Arthur v. Sallie Mae, Inc*., No. C-10-198JLR (dkt. 266) (W.D. Wash. 2012)

(providing for a $20-$40 cash payment to each class member); *Gutierrez, et al. v. Barclays*

*Group, et al*. No. 10-cv-1012 (dkt. 58) (S.D. Cal. 2012) (providing for a $100 cash payment to

each class member).

 This settlement falls into the latter "direct relationship" group. Here, each Class Member

had, at some time before any of the subject text messages were sent, voluntarily provided Red

Bull with his or her cell phone number—it is not alleged that Red Bull purchased lists of cell

phone numbers or dialed cell phone numbers at random. Thus, the $110 cash payment provided

for under the Settlement Agreement surpasses the recovery typically available in "direct

relationship" TCPA cases.

 In the end, the settlement is an exceedingly fair result for the Settlement Class because,

while Plaintiff is confident in the strength of her claims, she recognizes the uncertainty attendant

with class action litigation of this sort—especially given Defendant's ability and willingness to

continue its vigorous defense of this Action. As the results achieved by the settlement ultimately

parallel, if not exceed, those reached in other settlements involving similar claims under the

TCPA—settlements that have received the approval of courts in this District and throughout the country—this class action settlement should thus be viewed as well "within the range of approval." Accordingly, the proposed settlement should be preliminarily approved.

## VIII.  THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED.

Rule 23 and Due Process require that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class member." Newberg, § 11:53 at 167. The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that settlement class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B).

The Parties have agreed upon a multi-part notice plan that easily satisfies the notice requirements of both Rule 23 and Due Process. Because Defendant does not have the names, mailing addresses, or email addresses of the persons comprising the Settlement Class, a list of approximately 110,000 cell phone numbers to which Defendant's allegedly unauthorized text message advertisements were transmitted will be used by the settlement administrator, Epiq Systems, Inc. to look up any associated mailing addresses and email addresses to which it can provide notice via First Class U.S. mail and e-mail. (Agreement ¶ 4.2(c).) As a supplemental

means of notice, the Settlement Administrator will also purchase 1/3 page advertisement space in both *People* and *Game Informer* that contains a summary of the Settlement Agreement. (Agreement ¶ 4.2(d).) In addition, the Settlement Administrator will create a settlement website, www.millertextsettlement.com to serve as the "long-form" notice. (Agreement ¶ 4.2(e).) The settlement website will provide access to relevant court documents and allow Settlement Class Members to submit their claims electronically.

Copies of the proposed notices and the claim form are attached as Exhibits A, B, C, D, and E to the Settlement Agreement. The format and language of each form of notice has been drafted so that it is in plain language, is easy to read, will be readily understood by the members of the proposed class, and thus, comports with both Rule 23 and Due Process.

## IX. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court: (1) certify the Settlement Class; (2) appoint Thi Miller as the Class Representative; (3) appoint Jay Edelson and Rafey S. Balabanian of Edelson LLC as Class Counsel; (4) preliminarily approve the proposed Settlement Agreement; (5) approve the form and methods of notice; (6) and grant such further relief as the Court deems reasonable and just.

Dated: March 12, 2013                  Respectfully submitted,

THI MILLER, individually, and on behalf of
a class of similarly situated individuals,

By: /s/ Rafey S. Balabanian

Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
Benjamin H. Richman
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com
brichman@edelson.com

Joseph J. Siprut
SIPRUT PC
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
Tel: 312.588.1440
Fax: 312.878.1342
jsiprut@siprut.com

## CERTIFICATE OF SERVICE

I, Rafey S. Balabanian, an attorney, certify that on March 12, 2013, I served the above and foregoing ***Plaintiff's Unopposed Motion & Memorandum in Support of Preliminary Approval of Class Action Settlement*** by causing true and accurate copies of such paper to be filed and transmitted to the persons shown below via the Court's CM/ECF electronic filing system.

Edwin John U
Judson D. Brown
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
Tel: 202.879.5059
eu@kirkland.com
jdbrown@kirkland.com

Michael A. Duffy
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Tel: 312.861.2252
maduffy@kirkland.com

/s/ Rafey S. Balabanian

23