## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| THI MILLER, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. 12-cv-04961 |
| v. | [Hon. Amy J. St. Eve] |
| RED BULL NORTH AMERICA, INC., a California corporation, | |
| *Defendant.* | |

## PLAINTIFF'S UNOPPOSED MOTION FOR AND MEMORANDUM
## IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Respectfully submitted by:

Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com

*Attorneys for Plaintiff Miller and the Settlement Class*

## TABLE OF CONTENTS

I.  **INTRODUCTION** ...................................................................................................1

II.  **NATURE OF THE LITIGATION** ......................................................................3

    A.  **The Facts, The Law, and the Litigation History** ................................3

    B.  **Settlement Discussions and Private Mediation** ....................................4

III.  **TERMS OF THE SETTLEMENT** .......................................................................5

    A.  **Class Definition** ........................................................................................6

    B.  **Monetary Relief** .......................................................................................6

    C.  **Additional Relief** .....................................................................................6

        1.  **Prospective Relief** ........................................................................6

        2.  **Class Member List Removal Requests** ......................................7

    D.  **Release of Liability** ..................................................................................7

IV.  **NOTICE WAS PROVIDED TO THE SETTLEMENT CLASS AND DUE PROCESS SATISFIED** ...........................................................................................7

V.  **THE SETTLEMENT WARRANTS FINAL APPROVAL** .................................9

    A.  **The Strength of the Plaintiff's Case Compared to the Settlement Militates in Favor of Granting Approval**................................................9

    B.  **The Likelihood of an Increase in the Complexity, Length, and Expense of Continued Litigation Also Supports Final Approval of the Settlement** .....12

    C.  **There Has Been No Opposition to the Settlement**...............................12

    D.  **The Opinion of Competent Counsel Favors Approval**......................13

    E.  **Based on the Stage of Litigation and the Amount of Information Provided, Class Counsel had Sufficient Information to Evaluate the Merits of the Case and Reasonableness of the Agreement**..............................14

VI.  **CONCLUSION** ..................................................................................................15

## TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................................................7

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012).................................................3

**United States Circuit Court of Appeals Cases:**

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980)....................14

*Burns v. Elrod*, 757 F.2d 151 (7th Cir. 1985) ................................................................7

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)..........................................................14

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996)..............................................................9, 15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006).................. passim

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978 (7th Cir. 2002)..............................9

**United States District Court Cases:**

*Abbas v. Selling Source*, LLC, No. 09-CV-3413, 2009 WL 4884471
   (N.D. Ill. Dec. 14, 2009) ..........................................................................14

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-CV-2898, 2012 WL 651727
   (N.D. Ill. Feb. 28, 2012)......................................................................9, 10, 13

*Arthur v. Sallie Mae, Inc.*, No. C-10-198JLR (Dkt. 266) (W.D. Wash. 2012).........................2, 11

*Espinal v. Burger King Corporation,* No. 09-CV-20982 (S.D. Fla. 2010) .................................9

*Gutierrez, et al. v. Barclays Group, et al.*, No. 10-cv-1012 (Dkt. 58) (S.D. Cal. 2012) .................2

*Hispanics United v. Vill. of Addison.*, 988 F. Supp. 1130 (N.D. Ill. 1997) ..................................13

*In re AT&T Mobility Wireless Data Servs. Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010).................7, 10

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp.2d 935
   (N.D. Ill. June 2, 2011) ...................................................................9, 12, 13, 15

*In re Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal. 2010) .................................................14

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-MD-02261-JM-JMA (Dkt. 97)
(S.D. Cal 2013) ..................................................................................................2, 10, 11

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) .........................12, 13

*Kazemi v. Payless Shoesource, Inc.*, No. CV09-5142 (Dkt. 94) (N.D. Cal. 2012)...................2, 11

*Kramer v. Autobytel, Inc., et al.,* No. 10-cv-2722 (N.D. Cal. Jan. 27, 2012) .......................2, 9, 10

*Lozano v. Twentieth Century Fox Film Corp,* No. 09-cv-6344, 702 F. Supp. 2d
(N.D. Ill. Apr. 15, 2011) ...................................................................................2, 4, 8, 10

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) .........................................................7

*Roberts v. Paypal, Inc*., 2013 WL 2384242 (N.D. Cal. May 30, 2013) .......................................11

*Rojas v. Career Education Corporation,* No. 10-cv-5260 (N.D. Ill. 2012)....................................8

*Satterfield v. Simon & Schuster, Inc. et al.*, No. 06-cv-02893-CW
(N.D. Cal. Aug. 6, 2010)..................................................................................................2, 4, 14

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011)............................9, 13, 15

*Weinstein v. The Timberland Co. et al.*, No. 06-cv-00484 (Dkt. 93)
(N.D. Ill. Dec. 18, 2008) ...................................................................................................2

## **Rules and Statutes:**

Fed. R. Civ. P. 23 ..........................................................................................................7, 8, 9, 13

47 U.S.C. § 227, *et seq*...................................................................................................1, 3, 4

Plaintiff Thi Miller ("Plaintiff" or "Miller") respectfully requests that the Court enter an Order (i) granting final approval of the class action Settlement Agreement between Plaintiff and Defendant Red Bull North America, Inc. ("Defendant" or "Red Bull"), (ii) dismissing Plaintiff's Complaint against Defendant with prejudice and releasing Defendant from any and all Released Claims[1] as provided in the Settlement Agreement, and (iii) granting such other and further relief as the Court deems reasonable and just.  In support of her Motion, Plaintiff states as follows:

## I.    INTRODUCTION

This class action lawsuit alleges a single claim against Red Bull for its transmission of promotional text messages to certain consumers without properly obtaining their consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

In accordance with the Court's March 14, 2013 Preliminary Approval Order, (Dkt. 47), the Settlement Administrator effectuated the broad four-part Notice Plan set forth in the Settlement Agreement—which consisted of direct notice by mail and e-mail, the creation of a Settlement Website (which allowed Settlement Class Members to download claim forms and review all relevant court documents), publication notice in *People* and *Game Informer* magazines, and CAFA notice to the relevant governmental agencies—and the deadline for opt-outs and objections has now passed.  The reaction of the Settlement Class was exceedingly positive: thousands of Settlement Class Members have filed claims and not a single one has voiced any objection to the Settlement.  Similarly, in response to the Parties' CAFA notice, not a single Attorney General voiced any concern over the Settlement.

This overwhelmingly positive reaction is attributable to one thing: the strength of the Settlement.  To recap the relief, Red Bull agreed to establish a $6,000,000 Settlement Fund, from

---

[1]    Unless otherwise stated herein, capitalized terms shall have the same meaning as set forth in the Parties' Class Action Settlement Agreement, attached hereto as Exhibit 1.

which Settlement Class Members' claims, notice and administrative expenses, any special master

fees, Court-awarded attorneys' fees, and an incentive award to the named Class Representative

would be paid. By completing and submitting a simple claim form (either on-line or in hard-

copy form), each Settlement Class Member will receive an expected $110 cash payment—a

remarkable result that far surpasses the settlements reached in similar TCPA "direct relationship"

cases (i.e., those in which the class members had, at one point in time, voluntarily provided their

cell phone numbers directly to the defendant),[2] and approaches settlements reached in cases

where no direct relationship is alleged (which are viewed as stronger on the facts).[3] Further, Red

Bull has agreed to refrain from sending text messages in the future without first obtaining prior

express consent from the recipients.

     Given the exceptional results achieved, coupled with the positive response from the

Settlement Class, there should be little question that the settlement is fair, reasonable and

adequate. For these reasons, and as discussed further below, Plaintiff respectfully requests that

the Court grant final approval of the Parties' Settlement and dismiss all Released Claims with

---

[2]    Where a direct relationship exists between the defendant and the class members, the typical per class member recoveries range from under $25 in cash or vouchers to as much as $100 in cash. *See, e.g.*, *Kazemi v. Payless Shoesource, Inc.*, No. CV09-5142 (Dkt. 94) (N.D. Cal. 2012) (providing for a $25 voucher to each class member); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-MD-02261-JM-JMA (Dkt. 97) (S.D. Cal. 2013) (providing for a $20 voucher or $15 cash to each class member); *Arthur v. Sallie Mae, Inc.*, No. C-10-198JLR (Dkt. 266) (W.D. Wash. 2012) (providing for a $20-$40 cash payment to each class member); *Gutierrez, et al. v. Barclays Group, et al.* No. 10-cv-1012 (Dkt. 58) (S.D. Cal. 2012) (providing for a $100 cash payment to each class member).

[3]    *See, e.g., Kramer v. Autobytel, Inc., et al.,* No. 10-cv-2722 (N.D. Cal. Jan. 27, 2012)) (providing for a cash payment of $100 to each class member); *Weinstein v. The Timberland Co. et al.*, No. 06-cv-00484 (Dkt. 93) (N.D. Ill. Dec. 18, 2008) (providing for a cash payment of $150 to each class member); *Satterfield v. Simon & Schuster, Inc. et al.*, (Dkt. 132) (N.D. Cal. Aug. 6, 2010) (providing for a cash payment of $175 to each class member); *Lozano v. Twentieth Century Fox Film Corp,* No. 09-cv-6344 (Dkt. 65) (N.D. Ill. Apr. 15, 2011) (providing for a cash payment of $200 to each class member).

prejudice.[4]

## II.     NATURE OF THE LITIGATION

### A.     The Facts, The Law, and The Litigation History

Starting in 2007, energy drink company Red Bull allegedly utilized a "mobile club," through which it could send text message announcements and promotions to customers who provided their cell phone numbers to the company for such purposes. The instant class action alleges that while most of the time, Red Bull obtained express consent to send text messages to its customers, when it came to certain announcements and promotional campaigns, it failed to properly obtain consent from consumers. Thi Miller is one such consumer who allegedly received unsolicited text messages from Red Bull. On June 21, 2012—after receiving the unsolicited text messages at issue—Plaintiff Miller filed her Class Action Complaint against Red Bull alleging violations of the TCPA. (Dkt. 1.)

Congress enacted the TCPA to combat the growing threat to privacy being caused by automated telemarketing practices and made it "unlawful to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii); *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012). The TCPA applies with equal force to the making of text message calls as it does to the making of voice calls to cellular phones. *See Lozano,* 702 F. Supp. 2d at 1009; see also *Satterfield*, 569 F.3d at 954. The TCPA sets statutory damages of $500 per violation and provides for an injunction prohibiting the further transmission of such messages. 47 U.S.C. § 227(b)(3)(A-B).

---

[4]     A proposed Final Judgment Order is attached as Exhibit 2. The proposed order also accounts for the relief requested in Plaintiff's previously filed Motion for Award for Attorneys' Fees, Expenses, and Incentive Award.

Along with her Complaint, Plaintiff filed a motion for class certification to avoid an involuntary "pick off" and the mooting of her claim. Plaintiff's certification motion requested that the Court reserve its ruling on the certification issue until the Parties had a chance to conduct discovery into the relevant issues. (Dkt. 4.) Recognizing the issue of certification wasn't ripe for determination, the Court denied Plaintiff's motion without prejudice. Red Bull eventually answered the complaint, denying the substance of the allegations and setting forth numerous affirmative defenses. (Dkt. 29.) Shortly after Red Bull answered, however, Plaintiff moved to strike some of the affirmative defenses on the basis that they were legally insufficient. Red Bull amended its answer and affirmative defenses, and the Court denied Plaintiff's motion as moot. (Dkt. 38.)

Following their Rule 26(f) conference, the Parties exchanged initial disclosures, and Plaintiff propounded discovery on Red Bull and other third parties. (*See* Declaration of Jay Edelson ["Edelson Decl."] ¶ 2, a true and accurate copy of which is attached as Exhibit 3.) It was at this juncture that the Parties agreed to try and reach a negotiated resolution of the case through mediation with former District Judge Wayne Andersen. (*Id.* ¶ 2.) In the weeks leading up to mediation, the Parties informally exchanged certain documents and other information that would be needed to effectively engage in the mediation process. (*Id.*)

**B.     Settlement Discussions and Private Mediation**

On November 6-7, 2012, the Parties met for a formal mediation with Judge Andersen. (*Id.* 3.) After two days of mediation, additional exchanges of information, and several rounds of arm's-length negotiations—all with the assistance of Judge Andersen—the Parties made a great deal of progress toward a classwide settlement, but were still unable to come to complete terms. As certain issues remained unresolved, they agreed to continue talking, but did not commit to

any further mediation sessions. (*Id*.)

Negotiations continued on, however, and after several additional rounds that took place over the course of the next two months (all at arm's-length and presided over by Judge Andersen), and having made substantial progress toward a classwide settlement, the Parties agreed to another in-person mediation session, which took place on January 10, 2013. (*Id*. ¶ 4.) Through this subsequent mediation, the Parties were able to reach an agreement on the principal terms of a settlement. (*Id*.) However, as they attempted to reduce the final terms to writing, the Parties reached yet another impasse. (*Id*.) As such, Judge Andersen convened another mediation session on February 25, 2013. (*Id*.) With his continued assistance, the Parties were able to resolve all remaining issues concerning classwide relief.

At no point during those mediation sessions did the Parties discuss the issue of any attorneys' fees payable to Class Counsel. Indeed, under the terms of the Settlement Agreement, the Parties had no agreement on fees beyond that Class Counsel would petition the Court for an award of reasonable attorneys' fees and costs in an amount not to exceed $2,000,000. (*Id*. ¶ 5.) It was not until June 13, 2013—the deadline for Class Counsel to file what was anticipated to be their contested fee petition—that the Parties finally agreed on the amount of fees and costs to be paid to Class Counsel under the Settlement. (*Id*. ¶ 6.) Again, with the assistance of Judge Andersen, and this time through separate telephonic conferences, the Parties reached an agreement on fees and costs in the amount of $1,275,000, subject to Court approval. (*Id*.)

## III.    TERMS OF THE SETTLEMENT

The terms of the settlement preliminarily approved by the Court are set forth in their entirety in the attached Settlement Agreement, and are also summarized briefly below:

A.    **Class Definition.** The "Settlement Class" is defined, with specified exclusions,

as all Persons in the United States and its territories who received one or more unauthorized text messages from or on behalf of the Defendant as a result of a Non-Compliant Campaign.[5] (Agreement ¶ 1.34.)

**B.** **Monetary Relief.** Without admitting liability or damages, Red Bull has agreed to create a Settlement Fund in the amount of $6,000,000 that will be used to pay all Valid Approved Claims, Settlement Notice and Administration Expenses (including Special Master fees), an incentive award to the named Class Representative, and any award of attorneys' fees and reimbursement of expenses to Class Counsel. (Agreement ¶ 2.1(a).) Each Settlement Class Member who submits a Valid Approved Claim will be entitled to receive a payment by check of $110 (or a lesser *pro rata* share if claims, notice expenses, attorneys' fees and the incentive award exceed the amount of the Fund), to be paid from the Settlement Fund. (*Id.*)

**C.** **Additional Relief.** In addition to the individual relief to the Settlement Class provided above, Red Bull has also agreed to provide the following prospective relief under the Settlement:

**1.** **Prospective Relief:** Red Bull has agreed that, in the applicable circumstances, it will obtain express consent from individuals (to the extent it does not already have express consent) prior to sending them future text messages. (Agreement ¶ 2.2.)

**2.** **Class Member List Removal Requests:** Each Claim Form includes an option whereby each Settlement Class Member can choose to have his or her cell phone number

---

[5] A "Non-Compliant Campaign" is defined by the Settlement Agreement as "any advertising campaign conducted by or on behalf of the Defendant that is not a Compliant Campaign." (Agreement ¶ 1.16.) A "Compliant Campaign" is defined by the Settlement Agreement as "an advertising campaign conducted by or on behalf of the Defendant, where at least one advertisement or communication for the relevant campaign included language on its face indicating that a participant in the campaign would receive Text Messages from or on behalf of the Defendant. (*Id.* ¶ 1.5.) The Settlement Class excludes certain persons, such as those employed by Red Bull, as stated in Paragraph 1.34.

removed from any list or database of numbers to which text messages could be sent by or on behalf of Red Bull. (Agreement ¶ 2.3.)

      **D.**    **Release of Liability.** In exchange for the relief described above, Defendant, and each of its related entities and affiliated persons, will receive a full release and covenant not to sue for all claims related to the transmission of text messages to Settlement Class Members as a result of a Non-Compliant Campaign. (*See* Agreement ¶¶ 1.27-1.29, 3.1-3.3 for the complete release language.)

## IV.    NOTICE WAS PROVIDED TO THE SETTLEMENT CLASS AND DUE PROCESS WAS SATISFIED

      Prior to granting final approval of the Settlement, the Court must consider whether the notice to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *In re AT&T Mobility Wireless Data Servs. Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010). The "best notice practicable" does not require actual receipt of notice by all Class Members in order to comport with Rule 23 and due process. Rather, "notice should be mailed to the last known addresses of those who can be identified and publication used to notify the others." *Mangone v. First USA Bank*, 206 F.R.D. 222, 231-32 (S.D. Ill. 2001) (internal citations omitted); *see also Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) (noting that "Rule 23 does not require defendants to exhaust every conceivable method of identification").

      The multi-part Notice Plan approved by the Court has been fully implemented by the Settlement Administrator, Epiq Legal Noticing, in compliance with Due Process and Rule 23. First, Epiq sent direct notice of the settlement to all reasonably identifiable Settlement Class Members by mailing a postcard to their last known physical addresses as acquired through a

"Reverse Telephone Lookup" of their cell phone numbers.  As a result, from a list of 88,355 unique cell phone numbers, direct notice was sent via First Class U.S. Mail to 38,084 physical addresses.  Additionally, Epiq sent direct notice via email to 90,217 unique e-mail addresses associated with the Class.  Second, CAFA notice was sent to all the Attorneys General of each state, as well as the Attorney General of the United States.  Third, notice of the settlement was published in the April 19, 2013 editions of *People* and *Game Informer* magazines.

The U.S. Mail/E-mail and publication notices directed Settlement Class Members to the Settlement Website, www.millertextsettlement.com, which was launched and maintained by the Settlement Administrator.  The Settlement Website went live on March 22, 2013, and allowed for uninterrupted, 24/7 access to the long form notice, important court documents, and both downloadable and electronic versions of the claim form.  (*See* Declaration of Mallory R. Sander ["Sander Decl."] ¶ 13, a true and accurate copy of which is attached as Exhibit 4.)  The website remains operational today, and will remain so until after final approval of the Settlement and all Valid Approved Claims have been paid.  (*Id*.)  Moreover, the Settlement Administrator also established and operated a toll-free telephone line on March 22, 2013, through which Settlement Class Members could obtain information about the Settlement, request copies of the Notice and Claim Form, and receive assistance with submitting claims.  (*Id*. ¶ 15.)

The Notice Plan utilized here has been widely used in TCPA settlements, and routinely approved by federal courts in this District and across the country.  *See*, *e.g.*, *Rojas v. Career Education Corporation,* No. 10-cv-5260 (N.D. Ill. 2012); *Lozano*, No. 09-cv-6344 (N.D. Ill. 2011); *Kramer,* No. 10-cv-2722 (N.D. Cal. 2012); *Espinal v. Burger King Corporation,* No. 09-cv-20982 (S.D. Fla. 2010).  As this Court found in its Preliminary Approval Order, the Notice here is "the best practicable under the circumstances," (Dkt. 47 ¶ 8), and thus, both due process

and Rule 23's requirements have been satisfied.

## V. THE SETTLEMENT WARRANTS FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) mandates that "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval . . . after a hearing and finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28, 2012). "Federal courts naturally favor the settlement of class action litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011) (citing *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). Given the preference for settlement, the Court's inquiry when determining whether to grant final approval "is limited to [the consideration of] whether the proposed settlement is lawful, fair, reasonable and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 986 (7th Cir. 2002).

In analyzing the overall fairness of class settlements, courts typically employ a five-factor analysis, which evaluates "[1] the strength of Plaintiff's case compared to the amount of Defendant's settlement offer, [2] an assessment of the likely complexity, length and expense of the litigation, [3] an evaluation of the amount of opposition to settlement among affected parties, [4] the opinion of competent counsel, and [5] the stage of the proceedings and amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal citations omitted); *accord In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. June 2, 2011). Each of these factors weighs heavily in favor of granting final approval to the Settlement here.

### A. The Strength of the Plaintiff's Case as Compared to the Settlement Militates in Favor of Granting Approval.

The first and most important consideration in determining the fairness of a settlement is the strength of the plaintiff's case as compared to the overall value of the settlement. *Am. Int'l*

*Group,* 2012 WL 651727, at *2 (citing *Synfuel,* 463 F.3d at 653). The strength of a plaintiff's

case can be quantified by examining "the net expected value of continued litigation to the class"

and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point

on the range." *Id.* (quoting *Synfuel,* 463 F.3d at 653). However, "the Seventh Circuit

recognizes that a high degree of precision cannot be expected in these calculations" and

"[i]nstead, courts are to provide a ballpark valuation of the class's claims." *Id.* (internal

quotations omitted). Finally, "[b]ecause the essence of settlement is compromise courts should

not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In

re AT&T Mobility*, 270 F.R.D. at 347 (internal quotations omitted).

      Plaintiff and Class Counsel believe the merits of the case are strong and that Miller would

likely succeed on summary judgment or at trial. (Edelson Decl. ¶ 7.) Indeed, several courts have

addressed and disagreed with a number of the defenses asserted in Red Bull's Amended Answer,

including challenges to the constitutionality of the TCPA as a restriction on free speech, as well

as the argument that the offending messages needed to be sent to randomly or sequentially

generated phone numbers. *See, e.g., In re Jiffy Lube*, 847 F. Supp. 2d at 1256-57 (rejecting First

Amendment overbreadth challenge to TCPA text messaging class action); *Kramer*, 759 F. Supp.

2d. at 1171 (rejecting vagueness challenge to TCPA text messaging case); *Lozano*, 702 F. Supp.

2d at 1010-11 (rejecting argument that TCPA requires actual "use" of an ATDS instead of mere

"capacity").

      While Plaintiff and Class Counsel are confident in the strength of Plaintiff's claim, they

are also mindful of the risks inherent in moving forward with complex litigation of this nature—

absent a settlement, the success of any of Red Bull's various legal defenses and the factual

difficulties present in this case could deprive the Settlement Class Members of any potential

relief whatsoever. (Edelson Decl. ¶ 7.) To be sure, there are added risks associated with the possibility that Red Bull would prevail on its "direct relationship" defense—i.e., that each Settlement Class Member consented to receive future text messages when they voluntarily provided Red Bull with their cell phone numbers at some point in the past. *See Roberts v. Paypal, Inc*., 2013 WL 2384242, at *5 (N.D. Cal. May 30, 2013) (holding that the prior provision of a cell phone number to the sender of the text message for any reason constitutes prior express consent to be texted). Further, even if Plaintiff did prevail at trial, Defendant would most likely appeal, delaying (and subsequently making uncertain) whether the Settlement Class would obtain any recovery at all. (Edelson Decl. ¶ 7.)

The strength of the instant Settlement comes into further focus when compared with similar TCPA settlements that have received final approval from courts in this District and other federal districts throughout the country. As noted above, where—like here—a direct relationship exists between the defendant and the class members, typical per class member recoveries range from under $25 in cash or vouchers to at most $100 in cash. *See, e.g.*, *Payless Shoe Source*, No. CV09-5142 (providing for a $25 voucher to each class member); *In re Jiffy Lube*, No. 3:11-MD-02261-JM-JMA (providing for a $20 voucher or $15 cash to each class member); *Sallie Mae,* No. C-10-198JLR (providing for a $20-$40 cash payment to each class member); *Barclays Group,* No. 10-cv-1012 (providing for a $100 cash payment to each class member). Here, the $110 cash payment available to Settlement Class Members surpasses the relief typically offered in cases of this sort, which is further indication of the Settlement's strength.

Ultimately, the merits of Plaintiff's claim and the potential risks involved with continued litigation, when weighed against the exceptional results achieved for the Settlement Class under the Agreement—i.e., the immediate and beneficial relief of establishing a $6 million fund from

which $110 will be paid to each Settlement Class Member who submits a valid approved claim, as well as prospective relief—supports final approval of the Settlement.

**B.**     **The Likelihood of an Increase in the Complexity, Length, and Expense of Continued Litigation Also Supports Final Approval of the Settlement.**

Final approval of a settlement is favored in cases like the instant one, where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). There can be no doubt that continued litigation in this case would result in additional substantial expenses, including the costs of further discovery, the retention of expert witnesses, and the filing and briefing of pre-trial motions, including motions for class certification and summary judgment, both of which are traditionally very costly to brief. And should the case proceed to trial, evidence and witnesses from across the country would have to be convened, adding additional expense to the litigation. (Edelson Decl. ¶ 8); *see In re AT&T Mobility,* 789 F. Supp. 2d at 964 ("The costs associated with discovery in complex class actions can be significant"). Given the amount of potential statutory damages at issue and the lack of Seventh Circuit guidance on several of the relevant issues, the defeated party would certainly appeal an unfavorable judgment, resulting in greater expenses and a further delay of the final resolution of the dispute. Thus, the second *Synfuel* factor also weighs in favor of approving the Settlement.

**C.**     **There Has Been No Opposition to the Settlement.**

The absence of objectors is viewed by courts as "strong circumstantial evidence favoring settlement," and demonstrates that class members consider the settlement to be in their best interest. *Am. Int'l Group*, 2012 WL 651727, at *1; *see In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020-21 (finding that a settlement where "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements");

*see also AT&T Mobility,* 789 F. Supp. 2d at 964–65 ("[I]t is illuminative that only a tiny fraction of the Class members saw fit to opt out or to object.").

In the instant case, not a single Settlement Class Member has filed an objection to either the Settlement or the request for fees that was posted to the settlement website. (Sander Decl. ¶ 12.) What's more, throughout the claims process, attorneys and staff at Edelson LLC spoke with numerous Settlement Class Members whom expressed their satisfaction with and approval of the Settlement, and thanked Class Counsel for bringing the suit. (Edelson Decl. ¶ 9.) Put simply, the complete absence of objectors and opt-outs, coupled with the positive responses received, further supports granting final approval of the Settlement. The third *Synfuel* factor is easily met as well.

> **D.     The Opinion of Competent Counsel Favors Approval.**

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte*, 805 F. Supp. 2d at 586. This is especially true where Class Counsel are qualified, where settlement negotiations are extensive and thorough, and where there is no indication of collusion. *Id.*; *see also Hispanics United v. Vill. of Addison*, 988 F. Supp. 1130, 1150 n. 6 (N.D. Ill. 1997) (noting that a "strong initial presumption of fairness attaches" where the settlement is "the result of arm's-length negotiations," and where plaintiff's counsel are "experienced").

Class Counsel specialize in litigating consumer class actions and have been recognized as "pioneers" in this area of the law. (Edelson Decl. ¶ 10); *see In re Facebook Privacy Litig.*, 791 F.Supp.2d 705 (N.D. Cal. 2011) (finding Class Counsel to be "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue.") They have achieved some of the largest settlements in the country for TCPA

violations involving text spam, and have secured seminal decisions regarding the scope and

constitutionality of the TCPA at both the district and appellate court levels. *See, e.g., Abbas v.*

*Selling Source*, LLC, No. 09-cv-3413, 2009 WL 4884471, at *7–8 (N.D. Ill. Dec. 14, 2009)

(finding that the TCPA's application to SMS text messages does not violate the First

Amendment); *Satterfield*, 569 F.3d at 954 (arguing an issue of first impression and obtaining the

landmark ruling "that a text message is a 'call' within the TCPA."). Class counsel used this

experience to investigate and prosecute Plaintiff's claim and to obtain the exceptional relief

provided under the Settlement Agreement. Faced with the prospect of the Settlement Class

receiving nothing should Red Bull succeed on any of its defenses, Class Counsel are confident

based on the information at their disposal that the Settlement easily meets the "fair, reasonable

and adequate" standard and is in the best interests of the Settlement Class. (Edelson Decl. ¶ 10.)

The fourth *Synfuel* factor supports final approval.

> **E.      Based on the Stage of Litigation and the Amount of Information Provided,
> Class Counsel Had Sufficient Information to Evaluate the Merits of the Case
> and Reasonableness of the Agreement.**

Finally, the fifth factor focuses on the stage of the proceedings and amount of

information exchanged to determine "how fully the district court and counsel are able to evaluate

the merits of Plaintiff's claims." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d

305, 325 (7th Cir.1980) (overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th

Cir. 1998)). However, approval of a settlement does not hinge on the amount of formal discovery

conducted by the Parties; instead "the pertinent inquiry is what facts and information have been

provided." *Schulte*, 805 F.Supp.2d at 587 (quoting *In re AT&T*, 789 F. Supp. 2d at 967); *see also*

*Isby*, 75 F.3d at 1200 (approving a settlement where "discovery and investigation conducted by

class counsel prior to entering into settlement negotiations was extensive and thorough.").

In this case, the Settlement Agreement was not finalized until after the Parties had conducted sufficient discovery, engaged in numerous information exchanges, and participated in three separate mediations with Judge Andersen. (Edelson Decl. ¶¶ 2-6.) During the negotiations (which lasted several months), Class Counsel was able to fully assess the merits of the case. (Edelson Decl. ¶ 11.) With that information, combined with their experience in TCPA class actions generally, Class Counsel was able to effectively negotiate the Settlement now before the Court, which reflects the perceived strengths and weaknesses of the case. (*Id*.)

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff Thi Miller respectfully requests that the Court enter an Order (i) granting final approval of the Parties' Class Action Settlement Agreement, (ii) releasing any and all Released Claims as provided in the Parties' Class Action Settlement Agreement, and (iii) granting such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

Dated: July 29, 2013                              THI MILLER, individually and on behalf of all
                                                              others similarly situated

                                                              By: /s/  Ari J. Scharg
                                                                        *One of Plaintiff's Attorneys*

Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com

*Attorneys for Plaintiff Miller and the Settlement Class*

15

## CERTIFICATE OF SERVICE

I, Ari J. Scharg, an attorney, certify that on July 29, 2013, I served the above and foregoing ***Plaintiff's Unopposed Motion for and Memorandum in Support of Final Approval of Class Action Settlement***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.


/s/ Ari J. Scharg